EXHIBIT A

# NEW YORK BALLOON NOTE
### (Fixed Rate)

THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.

January 16, 2003                         MELVILLE                         New York
[Date]                                   [City]                           [State]

118-82 METROPOLITAN AVENUE, UNIT #1F, Kew Gardens, NY  11415
[Property Address]

1. **BORROWER'S PROMISE TO PAY**
   In return for a loan that I have received, I promise to pay U.S. $ 58,500.00        (this amount is called "Principal"), plus interest, to the order of Lender. Lender is MortgageSelect

I will make all payments under this Note in the form of cash, check or money order.
   I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

2. **INTEREST**
   Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of            8.295 %.
   The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

3. **PAYMENTS**
   **(A) Time and Place of Payments**
   I will pay principal and interest by making a payment every month.
   I will make my monthly payments on the  1st      day of each month beginning on  March 1, 2003              .
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on February 1, 2018                         , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
   I will make my monthly payments at  520 Broadhollow Road, Melville, NY  11747

or at a different place if required by the Note Holder.
   **(B) Amount of Monthly Payments**
   My monthly payment will be in the amount of U.S. $  441.34

DOC #:                               APPL #:
NEW YORK BALLOON FIXED RATE NOTE - Single Family - FANNIE MAE UNIFORM INSTRUMENT          Form 3260 1/01
                                                Page 1 of 3
VMP-870N(NY)  (0009)          UH31 0009          VMP MORTGAGE FORMS - (800)521-7291          Initials:

**4. ' BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**5.   LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6.   BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of    15

calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be
2.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note, whether or not a lawsuit is brought, to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7.   GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8.   OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9.   WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

DOC #:                                                        APPL #:

Initials:

**AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED**

Lender may require Immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may require Immediate Payment in Full if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person. However, Lender shall not require Immediate Payment in Full if this is prohibited by Applicable Law.

If Lender requires Immediate Payment in Full under this Paragraph 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given in accordance with Section 15. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
WILLIAM J. COVE, Sr          -Borrower                                              -Borrower

_____ (Seal)          _____ (Seal)
                             -Borrower                                              -Borrower

_____ (Seal)          _____ (Seal)
                             -Borrower                                              -Borrower

_____ (Seal)          _____ (Seal)
                             -Borrower                                              -Borrower

PAY TO THE ORDER OF          ...... FUNDING CORPORATION
WITHOUT RECOURSE
BY: MORTGAGE SELECT                                              *[Sign Original Only]*

CARLOS MALDONADO
Asst. Secretary

BY

DOC #                        APPL #

UM-870N(NY) (0009)                   Page 3 of 3                    Form 3260.33 1/01

Loan#

## ALLONGE TO NOTE

This endorsement is a permanent part of the Note, in the amount of **$58,500.00**

NOTE DATE:          **JANUARY 16, 2003**

BORROWER NAME:   **WILLIAM J.  COVE, SR**

PROPERTY:           **118-82 METROPOLITAN AVENUE, UNIT #1F, KEW GARDENS, NY 11415**

PAY TO THE ORDER OF:

**The Bank of New York Mellon Trust Company, National Association fka The Bank of New York Trust Company, N.A. as successor to JPMorgan Chase Bank, as Indenture Trustee for Residential Funding Mortgage Securities II, Inc., Home Equity Loan Trust 2003-HS2, Home Equity Loan-Backed Term Notes, Home Equity Loan-Backed Variable Funding Notes**

WITHOUT RECOURSE

**JP MORGAN CHASE BANK, AS INDENTURE TRUSTEE**

Name: _Wendell Phillips_
Title: _V.P._

Loan#

## ALLONGE TO NOTE

This endorsement is a permanent part of the Note, in the amount of **$58,500.00**

NOTE DATE:                    **JANUARY 16, 2003**

BORROWER NAME:         **WILLIAM J.  COVE, SR**

PROPERTY:                      **118-82 METROPOLITAN AVENUE, UNIT #1F, KEW GARDENS, NY 11415**

PAY TO THE ORDER OF:

**Partners for Payment Relief DE IV, LLC**

WITHOUT RECOURSE

**The Bank of New York Mellon Trust Company, National Association fka The Bank of New York Trust Company, N.A. as successor to JPMorgan Chase Bank, as Indenture Trustee for Residential Funding Mortgage Securities II, Inc., Home Equity Loan Trust 2003-HS2, Home Equity Loan-Backed Term Notes, Home Equity Loan-Backed Variable Funding Notes BY ITS ATTORNEY IN FACT OCWEN LOAN SERVICING, LLC**

Name: Samir Margetic
Title:   Authorized Signer



*Recording Info · Keep with Mortgage*

NY / Q

## DEPARTMENT OF FINANCE
### OFFICE OF THE CITY REGISTER

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

2003012100715003001E2573

### RECORDING AND ENDORSEMENT COVER PAGE

**PAGE 1 OF 11**

| | | |
|---|---|---|
| Document ID: 2003012100715003 | Document Date: 01-16-2003 | Preparation Date: 01-21-2003 |

Document Type: MORTGAGE
Document Page Count: 10

| PRESENTER: | RETURN TO: |
|---|---|
| EMPIRE ABSTRACT CORP | MORTGAGE SELECT |
| 1576 FRONT STREET | 520 BROADHOLLOW ROAD |
| EAST MEADOW, NY 11554 | MELVILLE, NY 11747 |
| 516-485-0200 | TITLE NO NTI 43095Q |
| gl444@aol.com | |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| QUEENS | 3322 | 1005 Entire Lot | 1F | 118-82 METROPOLITAN AVENUE |

Property Type: SINGLE RESIDENTIAL CONDO UNIT

### CROSS REFERENCE DATA

CRFN _____ *or* Document ID _____ *or* Year ____ Reel ____ Page ____ *or* File Number _____

### PARTIES

| MORTGAGER/BORROWER: | MORTGAGEE/LENDER: |
|---|---|
| WILLIAM J. COVE SR. | MORTGAGE SELECT |
| 68-64 YELLOWSTONE BLVD #403 | 520 BROADHOLLOW ROAD |
| FOREST HILLS, NY 11375 | MELVILLE, NY 11747 |

### FEES AND TAXES

| Mortgage | | | | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 58,500.00 | Recording Fee: $ | 87.00 |
| Taxable Mortgage Amount: | $ | 58,500.00 | Affidavit Fee: $ | 0.00 |
| Exemption: | | | NYC Real Property Transfer Tax: Filing Fee: | |
| TAXES: | | | $ | 0.00 |
| County (Basic): | $ | 292.50 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 585.00 | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 146.25 | | |
| MTA: | $ | 121.25 | | |
| NYCTA: | $ | 0.00 | | |
| TOTAL: | $ | 1,145.00 | | |

RECORDED OR FILED IN THE OFFICE
OF THE CITY REGISTER OF THE
CITY OF NEW YORK
Recorded/Filed          07-14-2003 12:22
City Register File No.(CRFN):
**2003000227790**

*John F. Lawrence*

*City Register Official Signature*



## MORGAGE

### WORDS USED OFTEN IN THIS DOCUMENT

(A) "Mortgage." This document, which is dated   January 16, 2003                 , will be called the "Mortgage."
(B) "Borrower."
WILLIAM J. COVE, Sr

whose address is 68-64 YELLOWSTONE BOULEVARD, Forest Hills, NY  11375
will sometimes be called the "Borrower" and sometimes simply "I."
(C) "Lender."
MortgageSelect
will be called the "Lender." Lender is a corporation or association which was formed and which exists under the laws of
State of New York                                                                                   Lender's address is
520 Broadhollow Road, Melville, NY  11747

(D) "Note." The junior lien note signed by Borrower and dated   January 16, 2003           , and extensions
and renewals of that note, will be called the "Note." The Note shows that I owe Lender U.S. $ 58,500.00
plus interest, which I have promised to pay in full by   February 1, 2018
(E) "Property." The property that is described below in the section titled "Description of the Property" will be called the
"Property."

### BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY

I mortgage, grant and convey the Property to Lender subject to the terms of this Mortgage. This means that, by signing this
Mortgage, I am giving Lender those rights that are stated in this Mortgage and also those rights that the law gives to lenders
who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result
if I do not:

(A) Pay all the amounts that I owe Lender as stated in the Note;
(B) Pay, with interest, any amounts that Lender spends under this Mortgage to protect the value of the Property and
    Lender's rights in the Property; and
(C) Keep all of my promises and agreements under this Mortgage.

With respect to the amounts that I owe under the Note and under this Mortgage, I waive the benefit of the right which is
known as the "homestead exemption." A homestead exemption is a property owner's right to keep a portion of his property
(usually up to a certain dollar amount) free from the claims of creditors. My waiver of this right means that the Lender may
exercise all of its rights under this Mortgage as if I were not entitled, under law, to the benefits of a homestead exemption.

### DESCRIPTION OF THE PROPERTY

I give Lender rights in the following Property:
(A) The property which is located at  118-82 METROPOLITAN AVENUE, UNIT #1F                             .
                                                            [Street]

Kew Gardens                      , New York  11415                            . This Property is in
         [City]                                        [State and ZIP Code]
Queens                                 County in the State of New York. It has the following legal description:
THIS MORTGAGE IS SUBJECT AND SUBORDINATE TO A CERTAIN MORTGAGE OF EVEN DATE
HEREWITH, MADE BY WILLIAM J. COVE, SR. IN FAVOR OF MORTGAGESELECT IN THE
PRINCIPAL AMOUNT OF $312,000.00

LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF.

(B) All buildings, structures and other improvements that are located on the property described in paragraph (A) of this
    section;
(C) All rights in other property that I have as owner of the property described in paragraph (A) of this section. These rights
    are known as "easements, rights and appurtenances attached to the property";
(D) All rents or royalties from the property described in paragraph (A) of this section; and
(E) All of the property described in paragraphs (B) through (D) of this section that I acquire in the future, and all rights
    described in paragraphs (B) through (D) of this section that I acquire in the future.

DOC #:                              APPL #:

NEW YORK - SECOND  MORTGAGE - 1/80 - FNMA/FHLMC UNIFORM INSTRUMENT

-76(NY) (9910)         UH31 9910              Page 1 of 6                                    Initials: ___    Form 3833
                                        VMP MORTGAGE FORMS - (800)521-7291

It may be that I do not own the Property but am a tenant under a lease. In that case, the rights I am giving to Lender by this Mortgage are rights in my tenancy.

**BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY**

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property other than claims and charges of record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because, as a result of something I have done, someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

**UNIFORM PROMISES**

I promise and I agree with Lender as follows:

1.  **BORROWER'S PROMISE TO PAY PRINCIPAL AND INTEREST UNDER THE NOTE AND TO FULFILL OTHER PAYMENT OBLIGATIONS**
    I will promptly pay to Lender when due principal and interest under the Note and late charges as stated in the Note.

2.  **AGREEMENTS ABOUT MONTHLY PAYMENTS FOR TAXES AND INSURANCE**
    **(A) Borrower's Obligation to Make Monthly Payments to Lender for Taxes and Insurance**
    I will pay to Lender all amounts necessary to pay for taxes, assessments, ground rents (if any), and hazard insurance on the Property and mortgage insurance (if any). I will pay those amounts to Lender (i) unless Lender tells me, in writing, that I do not have to do so or (ii) unless the law requires otherwise. Also, I will not have to pay to Lender any amount for which I am already making monthly payments to the holder of any superior mortgage or deed of trust, if it is a savings or banking institution. I will make those payments on the same day that my monthly payments of principal and interest are due under the Note.

    The amount of each of my payments under this Paragraph 2 will be the sum of the following:
    - (i) One-twelfth of the estimated yearly taxes, assessments (including condominium and planned unit development assessments, if any) and ground rents (if any) on the Property which under the law may be superior to this Mortgage; plus
    - (ii) One-twelfth of the estimated yearly premium for hazard insurance covering the Property; plus
    - (iii) One-twelfth of the estimated yearly premium for mortgage insurance (if any).

    Lender will determine from time to time my estimated yearly taxes, assessments, ground rents and insurance premiums based upon existing assessments and bills, and reasonable estimates of future assessments and bills. (Taxes, assessments, ground rents and insurance premiums will be called "taxes and insurance.")

    The amounts that I pay to Lender for taxes and insurance under this Paragraph 2 will be called the "Funds." The Funds are additional protection for Lender in case I do not fulfill my obligations under the Note and under this Mortgage.

    **(B) Lender's Obligations Concerning Borrower's Monthly Payments for Taxes and Insurance**
    Lender will keep the Funds in a savings or banking institution the deposits or accounts of which are insured or guaranteed by a Federal or state agency. If Lender is such an institution then Lender may hold the Funds. Except as described in this Paragraph 2, Lender will use the Funds to pay taxes and insurance. Lender will give to me, without charge, an annual accounting of the Funds. That accounting must show all additions to and deductions from the Funds, and the reason for each deduction.

    Lender may not charge me for holding or keeping the Funds on deposit, for using the Funds to pay taxes and insurance, for analyzing my payments of Funds, or for receiving, verifying and totalling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Funds and if the law permits Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Funds unless either (i) Lender and I agree in writing, at the time I sign this Mortgage, that Lender will pay interest on the Funds; or (ii) the law requires Lender to pay interest on the Funds.

    If Lender's estimates are too high or if taxes and insurance rates go down, the amounts that I pay under this Paragraph 2 will be too large. If this happens at a time when I am keeping all of my promises and agreements made in this Mortgage, I will have the right to have the excess amount either promptly repaid to me as a direct refund or credited to my future monthly payments of Funds. There will be excess amounts if, at any time, the sum of (a) the amount of Funds which Lender is holding or keeping on deposit, plus (b) the amount of the monthly payments of Funds which I still must pay between that time and the due dates of taxes and insurance, is greater than the amount necessary to pay the taxes and insurance when they are due.

    If, when payments of taxes and insurance are due, Lender has not received enough Funds from me to make those payments, I will pay to Lender whatever additional amount is necessary to pay the taxes and insurance in full. I must pay that additional amount in one or more payments as Lender may require.

    When I have paid all of the amounts due under the Note and under this Mortgage, Lender will promptly refund to me any Funds that are then being held or kept on deposit by Lender. If, under Paragraph 20 below, either Lender acquires the Property or the Property is sold, then immediately before the acquisition or sale, Lender will use any Funds which Lender is holding or has on deposit at that time to reduce the amount that I owe to Lender under the Note and under this Mortgage.

3. **APPLICATION OF BORROWER'S PAYMENTS**

Unless the law requires otherwise, Lender will apply each of my payments under the Note and under Paragraphs 1 and 2 above in the following order and for the following purposes:

(A)  First, to pay the amounts then due to Lender under Paragraph 2 above;

(B)  Next, to pay interest then due under the Note; and

(C)  Next, to pay principal then due under the Note.

4. **BORROWER'S OBLIGATION TO PAY PRIOR MORTGAGES, CHARGES AND ASSESSMENTS AND TO SATISFY CLAIMS AGAINST THE PROPERTY**

I will keep all promises that I have made in any superior mortgage or deed of trust, including my promises to make payments when due. I will pay all taxes, assessments, and any other charges and fines that may be imposed on the Property and that may be superior to this Mortgage. I will see that any claim, demand or charge that is made against the Property because an obligation has not been fulfilled (known as a "lien") is promptly paid or satisfied if the lien may be superior to this Mortgage. I will also make payments due under my lease if I am a tenant on the Property and I will pay ground rents (if any) due on the Property.

5. **BORROWER'S OBLIGATION TO OBTAIN AND TO KEEP HAZARD INSURANCE ON THE PROPERTY**

I will obtain hazard insurance to cover all buildings, structures and other improvements that now are or in the future will be located on the Property. The insurance must cover loss or damage caused by fire, hazards normally covered by "extended coverage" hazard insurance policies, and other hazards for which Lender requires coverage. The insurance must be in the amounts and for the periods of time required by Lender.

I may choose the insurance company, but my choice is subject to Lender's approval. Lender may not refuse to approve my choice unless the refusal is reasonable. All of the insurance policies and renewals of those policies must include what is known as a "standard mortgage clause" to protect Lender. The form of all policies and the form of all renewals must be acceptable to Lender. Lender will have the right to hold the policies and renewals, subject to the terms of any superior mortgage or deed of trust.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

If I abandon the Property, or if I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim for insurance benefits, then Lender has the authority to collect the proceeds. Lender may then use the proceeds to repair or restore the Property or to reduce the amount that I owe to Lender under the Note and under this Mortgage. The 30-day period will begin on the date the notice is mailed, or if it is not mailed, on the date the notice is delivered.

6. **BORROWER'S OBLIGATION TO MAINTAIN THE PROPERTY AND TO FULFILL OBLIGATIONS IN LEASE AND CONDOMINIUM AND PUD DOCUMENTS**

I will keep the Property in good repair. I will not destroy, damage or substantially change the Property, and I will not allow the Property to deteriorate. If I do not own but am a tenant on the Property, I will fulfill my obligations under my lease. If the Property is a unit in a condominium or in a planned unit development, I will fulfill all of my obligations under the declaration, by-laws, regulations and other documents that create or govern the condominium or the planned unit development.

7. **LENDER'S RIGHT TO TAKE ACTION TO PROTECT THE PROPERTY**

If: (A) I do not keep my promises and agreements made in this Mortgage, or (B) someone, including me, begins a legal proceeding that may significantly affect Lender's rights in the Property (such as, for example, a legal proceeding in bankruptcy, in probate, for condemnation, or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions under this Paragraph 7 may include, for example, appearing in court, paying reasonable attorneys' fees, and entering on the Property to make repairs. Lender must give me notice before Lender may take any of these actions.

I will pay to Lender any amounts, with interest, which Lender spends under this Paragraph 7. This Mortgage will protect Lender in case I do not keep this promise to pay those amounts with interest.

I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will also pay interest on those amounts at the same rate stated in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. However, Lender and I may agree in writing to terms of payment that are different from those in this paragraph.

Although Lender may take action under this Paragraph 7, Lender does not have to do so.

8. **LENDER'S RIGHT TO INSPECT THE PROPERTY**

Lender, and others authorized by Lender, may enter on and inspect the Property. They must do so in a reasonable manner and at reasonable times. However, before one of those inspections is made, Lender must give me notice stating a reasonable purpose for the inspection. That purpose must be related to Lender's rights in the Property.

9. **AGREEMENTS ABOUT CONDEMNATION OF THE PROPERTY**

A taking of property by any governmental authority by eminent domain is known as "condemnation." I give to Lender my right: (A) to proceeds of all awards or claims for damages resulting from condemnation or other governmental taking of the Property; and (B) to proceeds from a sale of the Property that is made to avoid condemnation. All of those proceeds will be paid to Lender, subject to the terms of any superior mortgage or deed of trust.

10. **BORROWER'S OBLIGATIONS TO PAY MORTGAGE INSURANCE PREMIUMS**

If Lender required mortgage insurance as a condition of making the loan that I promise to pay under the Note, I will pay the premiums for that mortgage insurance. I will pay the premiums until the requirement for mortgage insurance ends according to my written agreement with Lender or according to law. Lender may require me to pay premiums in the manner described in Paragraph 2 above.

11. **CONTINUATION OF BORROWER'S OBLIGATIONS**

Lender may allow a person who takes over my rights and obligations to delay or to change the amount of the monthly payments of principal and interest due under the Note or under this Mortgage. Even if Lender does this, however, that person and I will both still be fully obligated under the Note and under this Mortgage.

Lender may allow those delays or changes for a person who takes over my rights and obligations, even if Lender is requested not to do so. Lender will not be required to bring a lawsuit against a person for not fulfilling obligations under the Note or under this Mortgage, even if Lender is requested to do so.

12. **CONTINUATION OF LENDER'S RIGHTS**

Even if Lender does not exercise or enforce any right of Lender under this Mortgage or under the law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property, Lender will still have the right, under Paragraph 20 below, to demand that I make Immediate Payment In Full (see Paragraph 20 for a definition of this phrase) of the amount that I owe to Lender under the Note and under this Mortgage.

13. **LENDER'S ABILITY TO ENFORCE MORE THAN ONE OF LENDER'S RIGHTS**

Each of Lender's rights under this Mortgage is separate. Lender may exercise and enforce one or more of those rights, as well as any of Lender's other rights under the law, one at a time or all at once.

14. **OBLIGATIONS OF BORROWERS AND OF PERSONS TAKING OVER BORROWER'S RIGHTS OR OBLIGATIONS**

Subject to the terms of Paragraph 19 below, any person who takes over my rights or obligations under this Mortgage will have all of my rights and will be obligated to keep all of my promises and agreements made in this Mortgage. Similarly, any person who takes over Lender's rights or obligations under this Mortgage will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Mortgage. (In this Mortgage, the word "person" means any person, organization, governmental authority or any other party.)

If more than one person signs this Mortgage as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Mortgage. Lender may enforce Lender's rights under this Mortgage against each of us individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under the Note and under this Mortgage. However, if one of us does not sign the Note, then: (A) that person is signing this Mortgage only to give that person's rights in the Property to Lender under the terms of this Mortgage; and (B) that person is not personally obligated to make payments or to act under the Note or under this Mortgage. Any person signing this Mortgage but not signing the Note also agrees (i) that Lender may allow any other Borrower to delay or to change payments due under the Note or under this Mortgage and (ii) that Lender may make other accommodations under the Note or under this Mortgage. Lender may do this without obtaining anyone's consent and without modifying the effect of this Mortgage.

15. **AGREEMENT ABOUT GIVING NOTICES REQUIRED UNDER THIS MORTGAGE**

Unless the law requires otherwise, any notice that must be given to me under this Mortgage will be given by delivering it or by mailing it by certified mail addressed to me at the address stated in the section above titled "Description Of The Property." A notice will be delivered or mailed to me at a different address if I give Lender a notice of my different address. Any notice that must be given to Lender under this Mortgage will be given by mailing it by certified mail to Lender's address stated in paragraph (C) of the section above titled "Words Used Often In This Document." A notice will be mailed to Lender at a different address if Lender gives me a notice of the different address. A notice required by this Mortgage is given when it is mailed or when it is delivered according to the requirements of this Paragraph 15.

16. **LAW THAT GOVERNS THIS MORTGAGE**

The state and local law that applies in the place that the Property is located will govern this Mortgage. This will not limit Federal law that applies to this Mortgage. If any term of this Mortgage or of the Note conflicts with the law, all other terms of this Mortgage and of the Note will still remain in effect if they can be given effect without the conflicting term. This means that any terms of this Mortgage and the Note which conflict with the law can be separated from the remaining terms, and the remaining terms will still be enforced.

As used in this Mortgage, the words "costs," "expenses" and "attorneys' fees" include all amounts not prohibited by applicable law or limited in this Mortgage.

17. **BORROWER'S COPY OF THE NOTE AND OF THIS MORTGAGE**

I will be given copies of the Note and of this Mortgage. Those copies must show that the original Note and Mortgage have been signed. I will be given those copies either when I sign the Note and this Mortgage or after this Mortgage has been recorded in the proper official records.

18. **REHABILITATION LOAN AGREEMENT**

I will comply with all of the terms and conditions of any home rehabilitation, improvement, repair, modernization, remodeling or similar loan agreement I have with Lender. If Lender requests it, I will sign and give to Lender an assignment of any rights or claims I might have against persons who supply labor, materials or services in connection with improving the Property. This assignment will be in a form acceptable to Lender.

19. **AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED**
Lender may require immediate payment in full of all sums secured by this Mortgage if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may require immediate payment in full if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person. However, Lender shall not require immediate payment in full if this is prohibited by federal law on the date of this Mortgage.

If Lender requires immediate payment in full under this Paragraph 19, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is mailed or delivered. If I do not make the required payment during that period, Lender may act to enforce its rights under this Mortgage without giving me any further notice or demand for payment.

NON-UNIFORM PROMISES

I also promise and agree with Lender as follows:

20. **LENDER'S RIGHTS IF BORROWER FAILS TO KEEP PROMISES AND AGREEMENTS**
**If all of the conditions stated in subparagraphs (A), (B), and (C) of this Paragraph 20 are satisfied, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Mortgage. Lender may do this without making any further demand for payment. This requirement will be called "Immediate Payment in Full."**

**If Lender requires Immediate Payment In Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and to have the Property sold. At this sale Lender or another person may acquire the Property. This is known as "foreclosure and sale." If the proceeds of this sale are insufficient to repay Lender the amounts due to Lender from me under the Note and under this Mortgage, Lender may obtain a court judgment against me personally for the difference between all amounts due from me under the Note and this Mortgage and the sale proceeds. In any lawsuit for foreclosure and sale, Lender will have the right to collect all costs and expenses of the foreclosure and sale allowed by law.**

**Lender may require Immediate Payment In Full under this Paragraph 20 only if all of the following conditions are satisfied:**

(A) **I fail to keep any promise or agreement made in this Mortgage, including the promises to pay when due the amounts that I owe to Lender under the Note and under this Mortgage; and**
(B) **Lender gives to me, in the manner described in Paragraph 15 above, a notice that states:**
    (i) **The promise or agreement that I failed to keep;**
    (ii) **The action that I must take to correct that failure;**
    (iii) **A date by which I must correct the failure. That date must be at least 10 days from the date on which the notice is mailed to me;**
    (iv) **That if I do not correct the failure by the date stated in the notice, I will be in default and Lender may require Immediate Payment In Full, and Lender or another person may acquire the Property by means of foreclosure and sale;**
    (v) **That if I meet the conditions stated in Paragraph 21 below, I will have the right to have any lawsuit for foreclosure and sale discontinued and to have the Note and this Mortgage remain in full force and effect as if Immediate Payment In Full had never been required; and**
    (vi) **That I have the right in any lawsuit for foreclosure and sale to argue that I did not fail to keep any of my promises or agreements under the Note or under this Mortgage, and to present any other defenses that I may have; and**
(C) **I do not correct the failure stated in the notice from Lender by the date stated in that notice.**

21. **BORROWER'S RIGHT TO HAVE LENDER'S LAWSUIT FOR FORECLOSURE AND SALE DISCONTINUED**
Even if Lender has required Immediate Payment In Full, I may have the right to have discontinued any lawsuit brought by Lender for foreclosure and sale or for other enforcement of this Mortgage. I will have this right at any time before a judgment has been entered enforcing this Mortgage if I meet the following conditions:

(A) I pay to Lender the full amount that would have been due under this Mortgage and the Note if Lender had not required Immediate Payment In Full; and
(B) I correct my failure to keep any of my other promises or agreements made in this Mortgage; and
(C) I pay all of Lender's reasonable expenses in enforcing this Mortgage including, for example, reasonable attorneys' fees; and
(D) I do whatever Lender reasonably requires to assure that Lender's rights in the Property, Lender's rights under this Mortgage, and my obligations under the Note and under this Mortgage continue unchanged.

If all of the conditions in this Paragraph 21 are fulfilled, then the Note and this Mortgage will remain in full force and effect as if Immediate Payment In Full had never been required.

22. **LENDER'S RIGHTS TO RENTAL PAYMENTS FROM THE PROPERTY AND TO TAKE POSSESSION OF THE PROPERTY**
As additional protection for Lender, I give to Lender all of my rights to any rental payments from the Property. However, until Lender requires Immediate Payment In Full under Paragraphs 19 or 20 above, or until I abandon the Property, I have the right to collect and keep those rental payments as they become due. I have not given any of my rights to rental payments from the Property to anyone other than the holder of the Superior Mortgage, and I will not do so without Lender's consent in writing. If Lender requires Immediate Payment In Full under Paragraphs 19 or 20 above, or if I abandon the Property, then Lender, persons authorized by Lender, or a receiver appointed by a court at Lender's request may: (A) collect the rental payments, including overdue rental payments, directly from the tenants; (B) enter on and take possession of the Property; (C) manage the Property; and (D) sign, cancel and change leases. I agree that if Lender notifies the tenants that Lender has the right to collect rental payments directly from them under this Paragraph 22, the tenants may make those rental payments to Lender without having to ask whether I have failed to keep my promises and agreements under this Mortgage.

If there is a judgment for Lender in a lawsuit for foreclosure and sale, I will pay to Lender reasonable rent from the date the judgment is entered for as long as I occupy the Property. However, this does not give me the right to be a tenant on the Property.

All rental payments collected by Lender or by a receiver, other than the rent paid by me under this Paragraph 22, will be used first to pay the costs of collecting rental payments and of managing the Property. If any part of the rental payments remains after those costs have been paid in full, the remaining part will be used to reduce the amount that I owe Lender under the Note and under this Mortgage. The costs of managing the Property may include the receiver's fees, reasonable attorneys' fees, and the cost of any necessary bonds. Lender and the receiver will be obligated to account only for those rental payments that they actually receive.

23. **LENDER'S OBLIGATION TO DISCHARGE THIS MORTGAGE WHEN THE NOTE AND THIS MORTGAGE ARE PAID IN FULL**
When Lender has been paid all amounts due under the Note and under this Mortgage, Lender will discharge this Mortgage by delivering a certificate stating that this Mortgage has been satisfied. I will not be required to pay Lender for the discharge, but I will pay all costs of recording the discharge in the proper official records.

24. **AGREEMENTS ABOUT NEW YORK LIEN LAW**
I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that if, on the date this Mortgage is recorded in the proper official records, construction or other work on any building or other improvement located on the Property has not been completed for at least four months, I will: (A) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a "trust fund"; and (B) use those amounts to pay for that construction or the work before I use them for any other purpose. The fact that I am holding those amounts as a "trust fund" means that I have a special responsibility under the law to use the amounts in the manner described in this Paragraph 24.

25. **BORROWER'S STATEMENT REGARDING THE PROPERTY.** Check box(es) as applicable.
☑ This Security Instrument covers real property improved, or to be improved, by a one (1) or two (2) family dwelling only. *Single Residential Condo Unit*
☐ This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six (6) residential dwelling units with each dwelling unit having its own separate cooking facilities.
☐ This Security Instrument does not cover real property improved as described above.

**REQUEST FOR NOTICE OF DEFAULT
AND FORECLOSURE UNDER SUPERIOR
MORTGAGES OR DEEDS OF TRUST**

Borrower and Lender request the holder of any superior mortgage or deed of trust to notify Lender in writing, at Lender's address on page 1 of this Mortgage, if the Borrower is required to make "Immediate Payment in Full" and if there is "foreclosure and sale" under that superior mortgage or deed of trust.

By signing this Mortgage I agree to all of the above.
Witnesses:

_____     _____ (Seal)
                                     WILLIAM J. COVE, Sr                    -Borrower

_____     _____ (Seal)
                                                                            -Borrower

                                     _____ (Seal)
                                                                            -Borrower

                                     _____ (Seal)
                                                                            -Borrower

                                                     *(Sign Original Only)*

**STATE OF NEW YORK**                        )
                                             )ss.
County of  SUFFOLK                           )

On the 16th   day of  January    in the year 2003    before me, the undersigned, a notary public in and for said state, personally appeared WILLIAM J. COVE, Sr

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that  he   executed the same in  his   capacity(ies), and that by  his   signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

Tax Map Information:
DOC #:                    APPL #
VMP-76(NY) (9910)                        Page 6 of 6                        Form 3833

# EMPIRE ABSTRACT CORP.

Agent for

## National Title Insurance Company of New York, Inc.
Amended 1/7/2003

Title No.
File No.

Exhibit    , A

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the County of Queens, known and designated as Unit 1F in the premises located at 118-82 Metropolitan Avenue, Kew Gardens, New York, in the Declaration made by Metropolitan Avenue Associates L.P. under Article 9-B of the New York Real Property Law (the Condominium Act"), dated 2/18/02 and recorded in the Queens County Office of the Register of the City of New York (the "Register's Office") on 4/11/02 in Reel 6319 Page 986, covering the property therein described (herein called the "Declaration") establishing a plan of condominium ownership of the land and Units comprising Forest Park Condominium (hereinafter called the "Condominium"). The Real property above described is a unit shown on the plans of the Condominium, prepared and certified by Tambasco Sears, Architects, dated and filed in the Real Property Assessment Department of the City of New York, as Condominium Plan No. 410, and also filed in the Register's Office on 4/11/02, (hereinafter called the "Unit").

TOGETHER with a 4.595% undivided interest in the Common Elements of the Condominium hereinafter described in said Declaration.

SAID unit being known and designated as Section 17, Block 3322, Lot 1005 on the Tax Map of the Borough of Queens, City of New York, and being a unit in the land area of the Condominium Property, bounded and described as follows:

ALL that certain lot, piece or parcel of land with the building and improvements thereon erected, situate, lying and being part of the place called "Richmond Hill" in the Borough and County of Queens, City and State of New York, laid down upon a map of said place entitled, "Northern part of Man Tract, Richmond Hill, Queens County, New York" made by A.P. Man, C.E., October 1898 and described with reference to said map as follows:

BEGINNING at the intersection of the southerly side of Metropolitan Avenue with the westerly side of Lefferts Avenue now Lefferts Boulevard;

RUNNING THENCE westerly, along said southerly side of Metropolitan Avenue, 72 feet;

THENCE southerly, at right angles with Metropolitan Avenue, 100 feet;

THENCE easterly, parallel with Metropolitan Avenue to the westerly side of Lefferts Avenue, 120.38 feet;

THENCE northerly, along said westerly side of Lefferts Avenue, 111.55 feet to the point or place of BEGINNING.

FOR INFORMATION ONLY:          BLOCK: 3322          LOT: 1005

SAID PREMISES also being known as 118-82 Metropolitan Avenue, Unit 1F, Queens, New York. ،

# CONDOMINIUM RIDER

THIS CONDOMINIUM RIDER is made this   16th          day of     January, 2003     ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to
secure Borrower's Note to   WILLIAM J. COVE, Sr

(the "Lender") of the same date and covering the property described in the Security Instrument and located
at: 118-82 METROPOLITAN AVENUE, UNIT #1F, Kew Gardens, NY  11415

[Property Address]

The Property includes a unit in, together with an undivided interest in the common elements of, a
condominium project known as:
Forest Park Condominiums

[Name of Condominium Project]

(the "Condominium Project"). If the owners association or other entity which acts for the Condominium
Project (the "Owners Association") holds title to property for the benefit or use of its members or
shareholders, the Property also includes Borrower's interest in the Owners Association and the uses, proceeds
and benefits of Borrower's interest.

**CONDOMINIUM COVENANTS**. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**A. Condominium Obligations.** Borrower shall perform all of Borrower's obligations under the
Condominium Project's Constituent Documents. The "Constituent Documents" are the: (i) Declaration or any
other document which creates the Condominium Project; (ii) by-laws; (iii) code of regulations; and (iv) other
equivalent documents. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to
the Constituent Documents.

**B. Hazard Insurance.** So long as the Owners Association maintains, with a generally accepted
insurance carrier, a "master" or "blanket" policy on the Condominium Project which is satisfactory to Lender
and which provides insurance coverage in the amounts (including deductible levels), for the periods,

DOC  #:                      APPL #:
MULTISTATE CONDOMINIUM RIDER -Single  Family/Second   Mortgage

-208R (0003)        UM31  00/03/99
Page 1 of 3         Initials:
VMP MORTGAGE FORMS - (800)521-7291

and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, from which Lender requires insurance, then: (i) Lender waives the provision in Uniform Covenant 2 for the monthly payment to Lender of the yearly premium installments for hazard insurance on the Property; and (ii) Borrower's obligation under Uniform Covenant 5 to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage provided by the master or blanket policy.

In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Uniform Covenant 9.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Condominium Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

DOC #:                    APPL #:

Initials:

-208R (0003)    UM31 0003          Page 2 of 3                                      3/99

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Condominium Rider.

_____ (Seal)          _____ (Seal)
WILLIAM J. COVE, Sr        -Borrower                                    -Borrower

_____ (Seal)          _____ (Seal)
                           -Borrower                                    -Borrower

_____ (Seal)          _____ (Seal)
                           -Borrower                                    -Borrower

_____ (Seal)          _____ (Seal)
                           -Borrower                                    -Borrower

DOC  #:                    APPL #

-208R (0003)    UM31 0003          Page 3 of 3                          3/99

*Recording Info - Keep with ASSIGNMENT*



**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

2003111101463001001E9F9A

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 4 |
|---|---|

Document ID: 2003111101463001    Document Date: 01-16-2003    Preparation Date: 11-11-2003
Document Type: ASSIGNMENT, MORTGAGE
Document Page Count: 3

| PRESENTER: | RETURN TO: |
|---|---|
| PEELLE MANAGEMENT CORPORATION | PEELLE MANAGEMENT CORPORATION |
| 4690 LONGLEY LANE #8 | 4690 LONGLEY LANE #8 |
| RENO, NV 89502 | RENO, NV 89502 |
| 775-827-9600 | 775-827-9600 |

**PROPERTY DATA**

| Borough | Block | Lot | | Unit | Address |
|---|---|---|---|---|---|
| QUEENS | 3322 | 1005 | Entire Lot | 1F | 118-82 METROPOLITAN AVENUE |

Property Type: DWELLING ONLY - 2 FAMILY

**CROSS REFERENCE DATA**

QUEENS File Number: 03000227790

**PARTIES**

| ASSIGNOR/OLD LENDER: | ASSIGNEE/NEW LENDER: |
|---|---|
| MORTGAGESELECT | JPMORGAN CHASE BANK AS INDENTURE TRUSTEE |
| 520 BROADHOLLOW ROAD | 2255 NORTH ONTARIO, SUITE 400 |
| MELVILLE, NY 11747 | BURBANK, CA 91504-3190 |

**FEES AND TAXES**

| Mortgage | | | Recording Fee: $ | 52.00 |
|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | Affidavit Fee: $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax Filing Fee: | |
| Exemption: | | | $ | 0.00 |
| TAXES: | | | NYS Real Estate Transfer Tax: | |
| County (Basic): | $ | 0.00 | $ | 0.00 |
| City (Additional): | $ | 0.00 | **RECORDED OR FILED IN THE OFFICE** |
| Spec (Additional): | $ | 0.00 | **OF THE CITY REGISTER OF THE** |
| TASF: | $ | 0.00 | **CITY OF NEW YORK** |
| MTA: | $ | 0.00 | Recorded/Filed    02-02-2004 17:21 |
| NYCTA: | $ | 0.00 | City Register File No.(CRFN): |
| TOTAL: | $ | 0.00 | 2004000062073 |

*Rochelle Patrick*

*City Register Official Signature*



## NYC DEPARTMENT OF FINANCE
## OFFICE OF THE CITY REGISTER

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2003111101463001001E9F9A

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 4 |
|---|---|

**Document ID:** 2003111101463001     Document Date: 01-16-2003     Preparation Date: 11-11-2003
Document Type: ASSIGNMENT, MORTGAGE
Document Page Count: 3

| PRESENTER: | RETURN TO: |
|---|---|
| PEELLE MANAGEMENT CORPORATION | PEELLE MANAGEMENT CORPORATION |
| 4690 LONGLEY LANE #8 | 4690 LONGLEY LANE #8 |
| RENO, NV 89502 | RENO, NV 89502 |
| 775-827-9600 | 775-827-9600 |

### PROPERTY DATA

| Borough | Block | Lot | | Unit | Address |
|---|---|---|---|---|---|
| QUEENS | 3322 | 1005 | Entire Lot | 1F | 118-82 METROPOLITAN AVENUE |

Property Type: DWELLING ONLY - 2 FAMILY

### CROSS REFERENCE DATA

QUEENS  File Number: 03000227790

### PARTIES

| ASSIGNOR/OLD LENDER: | ASSIGNEE/NEW LENDER: |
|---|---|
| MORTGAGESELECT | JPMORGAN CHASE BANK AS INDENTURE TRUSTEE |
| 520 BROADHOLLOW ROAD | 2255 NORTH ONTARIO, SUITE 400 |
| MELVILLE, NY 11747 | BURBANK, CA 91504-3190 |

### FEES AND TAXES

| Mortgage | | | Recording Fee: $ | 52.00 |
|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | Affidavit Fee:  $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax  Filing Fee: | |
| Exemption: | | | $ | 0.00 |
| TAXES: | | | NYS Real Estate Transfer Tax: | |
| County (Basic): | $ | 0.00 | $ | 0.00 |
| City (Additional): | $ | 0.00 | | |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 0.00 | | |
| MTA: | $ | 0.00 | | |
| NYCTA: | $ | 0.00 | | |
| TOTAL: | $ | 0.00 | | |

ASSIGNMENT OF MORTGAGE WITHOUT COVENANTS  IND. OR CORP.
CONSULT YOUR LAWYER BEFORE SIGNING THIS INSTRUMENT - THIS INSTRUMENT SHOULD BE USED BY LAWYERS ONLY

31-

**KNOW THAT**

MortgageSelect
520 Broadhollow Road
Melville, NY 11747

assignor,

in consideration of    TEN                           dollars,

paid by   JPMorgan Chase Bank, as Indenture Trustee, c/o Residential Funding
Corporation, 2255 North Ontario, Suite 400, Burbank, CA 91504-3190

assignee,

hereby assigns unto the assignee,
    Mortgage dated       January 16, 2003

made by   WILLIAM J. COVE, Sr

to   MortgageSelect

in the principal sum of $58,500.00    intended to be recorded nearly simultaneously herewith
in the Office of the   County Clerk    of the County of Queens   , covering premises
commonly known as 118-82 METROPOLITAN AVENUE, UNIT #1F, Kew Gardens, NY 11415
                        , which premises are more particularly described in the aforesaid
mortgage being assigned herewith.

*See attached Exhibit A*

*Recorded: 07-14-03*

*Block: 3322*
*Lot: 1005*

*Instr #: 2003 00022 7790*

**THIS ASSIGNMENT IS NOT SUBJECT TO THE REQUIREMENTS OF SECTION 275 OF THE
REAL PROPERTY LAW BECAUSE IT IS AN ASSIGNMENT IN THE SECONDARY
MORTGAGE MARKET.**

Together with the bond or note or obligation described in said mortgage, and the monies due and to
grow due thereon with the interest; TO HAVE AND TO HOLD the same unto the assignee and to
the successors, legal representatives and assigns of the assignee forever.

The word "assignor" or "assignee" shall be construed as if it read "assignors" or "assignees"
whenever the sense of this instrument so requires.

IN WITNESS WHEREOF, the assignor has duly executed this assignment the 16th day of   January 2003

MortgageSelect

BY:    *Jodie Freedman*

JODIE FREEDMAN
Authorized Signatory

After Recording Return To:
**PEELE MANAGEMENT CORPORATION**
ASSIGNMENT JOB #90815
P.O. BOX 30014
RENO, NV 89520-3014
(775) 827-9600

Document No.    ./Form Name         '(10/97)

Cove SR William J

This Instrument Prepared By: MortgageSelect, address: 520 BROADHOLLOW ROAD, MELVILLE, NEW YORK 11747, TEL. NO: (516) 949- 3900.

_____ACKNOWLEDGMENT_____

State Of New York

County of Suffolk


On the 16th day of January in the year 2003, before me, undersigned, a notary public in and for the state, personally appeared Jodie Freedman, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is(are) subscribed in the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies) and that by his/her/their signature(s) on the instrument, the individual(s) or the person upon behalf of which the individual(s) acted, executed the instrument.


Section
Block       3322
Lot         1005
APN#
County      Queens

Document No.      .3/99)                    Page 2 of 2

CHRISTINA WILLMS
Notary Public, State of New York
No. 1WI5080260
Qualified in Suffolk County
Commission Expires 6/16/

Recording Requested By:
OCWEN LOAN SERVICING, LLC

When Recorded Return To:

OCWEN LOAN SERVICING, LLC
240 TECHNOLOGY DRIVE
IDAHO FALLS, ID 83401

## CORPORATE ASSIGNMENT OF MORTGAGE

Queens, New York
SELLER'S SERVICING #:                "COVE"
INVESTOR'S LOAN #: SCG ZL0132
OLD SERVICING #:

Date of Assignment: 08/04/2015
Assignor: JPMORGAN CHASE BANK N.A. F/K/A JPMORGAN CHASE BANK AS INDENTURE TRUSTEE at 1 Chase Manhattan Plaza FL 16, NEW YORK, NY 10005
Assignee: The Bank of New York Mellon Trust Company, National Association fka The Bank of New York Trust Company, N.A. as successor to JPMorgan Chase Bank, as Indenture Trustee for Residential Funding Mortgage Securities II, Inc., Home Equity Loan Trust 2003-HS2, Home Equity Loan-Backed Term Notes, Home Equity Loan-Backed Variable Funding Notes at C/O OCWEN LOAN SERVICING, LLC, 1661 WORTHINGTON ROAD, SUITE 100, WEST PALM BEACH, FL 33409
Executed By: WILLIAM J. COVE, SR  To: MortgageSelect
Date of Mortgage: 01/16/2003 Recorded: 07/14/2003 in Book/Reel/Liber: N/A Page/Folio: N/A as Instrument No.: 2003000227790 In the County of Queens, State of New York.

-Assigned Wholly by MORTGAGESELECT to JPMORGAN CHASE BANK AS INDENTURE TRUSTEE Dated: 01/16/2003 Recorded: 02/02/2004 in Book/Reel/Liber: N/A Page/Folio: N/A as Instrument No.: 2004000062073

Section/Block/Lot NA-3322-1005

Property Address: 118-82 METROPOLITAN AVENUE, KEW GARDENS, NY 11415
    This Assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.

    KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Mortgage having an original principal sum of $58,500.00 with interest, secured thereby, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's interest under the Mortgage.

    TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the terms contained in said Mortgage.  IN WITNESS WHEREOF, the assignor has executed these presents the day and year first above written:

JPMORGAN CHASE BANK N.A. F/K/A JPMORGAN CHASE BANK AS INDENTURE TRUSTEE
On 08/04/2015

By: _____
Name: Paul O. Savitsky
Title: Vice President

STATE OF New York
COUNTY OF New York

On the 4th day of August in the year 2015 before me, the undersigned, personally appeared Paul O. Savitsky (name), Vice President (title) personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is(are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument, and that such individuals(s) made such appearance before the undersigned in the County of New York , State of New York .

WITNESS my hand and official seal,

_____
Dustin J. O'Brien
Notary Expires: 04/13/2019
State of New York           County of New York

| DUSTIN J. O'BRIEN |
| Notary Public, State of New York |
| Registration #01OB6322613 |
| Qualified in New York County |
| Commission Expires April 13, 2019 |

(This area for notarial seal)

Recording Requested By:
OCWEN LOAN SERVICING, LLC

When Recorded Return To:

OCWEN LOAN SERVICING, LLC
240 TECHNOLOGY DRIVE
IDAHO FALLS, ID  83401

## CORPORATE ASSIGNMENT OF MORTGAGE

Queens, New York
SELLER'S SERVICING #        - "COVE"
INVESTOR'S LOAN #: .
OLD SERVICING #:

Date of Assignment: August 5th, 2015
Assignor: The Bank of New York Mellon Trust Company, National Association fka The Bank of New York Trust
Company, N.A. as successor to JPMorgan Chase Bank, as Indenture Trustee for Residential Funding Mortgage
Securities II, Inc., Home Equity Loan Trust 2003-HS2, Home Equity Loan-Backed Term Notes, Home Equity
Loan-Backed Variable Funding Notes, BY ITS ATTORNEY IN FACT OCWEN LOAN SERVICING, LLC at 1661
WORTHINGTON RD, SUITE 100, WEST PALM BEACH, FL  33409
Assignee: PARTNERS FOR PAYMENT RELIEF DE IV, LLC at 3748 WEST CHESTER PIKE, SUITE 103,
NEWTOWN SQUARE, PA  19073
Executed By: WILLIAM J. COVE, SR  To: MORTGAGESELECT
Date of Mortgage:  01/16/2003 Recorded:  07/14/2003  in Book/Reel/Liber: N/A Page/Folio: N/A as Instrument No.:
2003000227790  In the County of Queens, State of New York.

-Assigned Wholly by MORTGAGESELECT TO JP MORGAN CHASE BANK AS INDENTURE TRUSTEE Dated:
01/16/2003 Recorded:  02/02/2004  in Book/Reel/Liber: N/A Page/Folio: N/A as Instrument No.: 2004000062073
-Assigned Wholly by JPMORGAN CHASE BANK N.A. F/K/A JPMORGAN CHASE BANK AS INDENTURE
TRUSTEE TO THE BANK OF NEW YORK MELLON TRUST COMPANY, NATIONAL ASSOCIATION  FKA THE
BANK OF NEW YORK TRUST COMPANY, N.A. AS SUCCESSOR TO JPMORGAN CHASE BANK, AS
INDENTURE TRUSTEE FOR RESIDENTIAL FUNDING MORTGAGE SECURITIES II, INC., HOME EQUITY LOAN
TRUST 2003-HS2, HOME EQUITY LOAN-BACKED TERM NOTES, HOME EQUITY LOAN-BACKED VARIABLE
FUNDING NOTES Dated: 08/04/2015 Document to be recorded concurrently herewith

Section/Block/Lot NA-3322-1005

Property Address: 118-82 METROPOLITAN AVENUE, KEW GARDENS, NY  11415
   This Assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an
assignment within the secondary mortgage market.

   KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of
which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said
Mortgage having an original principal sum of $58,500.00 with interest, secured thereby, and the full benefit of all the
powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys
unto the said Assignee, the Assignor's interest under the Mortgage.

   TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the
terms contained in said Mortgage.  IN WITNESS WHEREOF, the assignor has executed these presents the day and
year first above written:

   The Bank of New York Mellon Trust Company, National Association fka The Bank of New York Trust Company,
N.A. as successor to JPMorgan Chase Bank, as Indenture Trustee for Residential Funding Mortgage Securities II,
Inc., Home Equity Loan Trust 2003-HS2, Home Equity Loan-Backed Term Notes, Home Equity Loan-Backed
Variable Funding Notes, BY ITS ATTORNEY IN FACT OCWEN LOAN SERVICING, LLC
On   AUG 0 5 2015

By: _____
   **Samir Margetic**          , Authorized
Signer

CORPORATE ASSIGNMENT OF MORTGAGE Page 2 of 2

STATE OF _FLORIDA_
COUNTY OF _PALM BEACH_

On the __5TH__ day of _AUGUST_ in the year _2015_ before me, the undersigned,
personally appeared __Samir Margetic__, Authorized Signer, personally known to me or proved to me on
the basis of satisfactory evidence to be the individual(s) whose name(s) is(are) subscribed to the within instrument
and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their
signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed
the instrument, and that such individuals(s) made such appearance before the undersigned in the County of
_PALM BEACH_, State of _FLORIDA_.

WITNESS my hand and official seal,

Notary Public State of Florida
Christian J Ferrer
My Commission FF 062234
Expires 12/30/2016

_____
 Christian J. Ferrer
Notary Expires: _12/30/2016_
State of _FLORIDA_ County of _PALM BEACH_

(This area for notarial seal)